═══════

(86 Misc. Rep. 696)

In re HOYT'S ESTATE.

(Surrogate's Court, New York County. August 3, 1914.)

1. GIFTS (§ 5*)—GIFTS INTER VIVOS—WHAT CONSTITUTES.

Where a donor creates a trust for the benefit of others, reserving an unqualified power of amendment or revocation, the donor's dominion over the trust property is not completely divested, and there is no valid gift inter vivos.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 22–27; Dig. Dig. § 5.*]

2. TAXATION (§ 879*)—TRANSFER TAXES—CONVEYANCE IN CONTEMPLATION OF DEATH.

Where a donor executed a trust deed conveying certain real estate, the income to be paid to her son for life. with remainders over, but reserved an absolute power to amend or revoke the deed, the conveyance is, upon the donor's death, subject to transfer taxes under Tax Law (Consol. Laws, c. 60) § 220, subd. 3. providing that when property is transferred by deed made in contemplation of death, or intended to take effect in possession at or after such death, transfer taxes shall be collected; the reservation of dominion over the trust being, in view of Real Property Law (Consol. Laws, c. 50) § 145, declaring that a reservation for the settlor's own benefit of power of revocation is the property of the settlor, property of the donor which did not pass to the cestui que trust until the donor's death.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

In the matter of the application of the United States Trust Company of New York as trustee of a trust estate created by Rhoda E. Hoyt for an order declaring the trust fund exempt from taxation. Application denied.

Stewart & Shearer, of New York City, for petitioner United States Trust Co. of New York.

Thomas E. Rush, of New York City (Thomas A. S. Beattie, of New York City, of counsel), for respondent State Comptroller.

FOWLER, S. This is an application by the United States Trust Company of New York, as trustee of a trust deed executed by Rhoda E. Hoyt on the 30th of November, 1901, for an order declaring that the trust fund is exempt from taxation under the provisions of the Transfer Tax Law.

[1] The deed provided that the property thereby transferred by the grantor, Rhoda E. Hoyt, should be held in trust, the income to be applied to the use of her son, Reuben M. Hoyt, during his life, and upon his death the principal of the trust fund to be divided among his issue per stirpes, but in the event of his death without leaving issue the principal—

"to be paid over to and among the persons who are then next of kin of my son, Reuben M. Hoyt, in the manner and proportions directed by the law of the state of New York for the distribution of estates of persons dying intestate, but in no event shall any portion of such principal become the property of Charlotte M. Hoyt, the wife of my said son, Reuben M. Hoyt."

The donor also reserved the absolute and unqualified power to amend or revoke the trust deed.

Rhoda E. Hoyt died on the 6th of December, 1901. Reuben M. Hoyt died in May, 1914, leaving no issue him surviving. His next of kin were his sister and the children of his deceased brothers.

Subdivision 3 of section 220 of the Tax Law in force at the date of the execution of the deed, which was also the Tax Law in force at the date of the grantor's death, provided that when property is transferred "by deed made in contemplation of the death of the grantor or intended to take effect in possession or enjoyment at or after such death," it is subject to a tax. The property must be transferred as a gift, because property transferred for a valuable consideration is not within the purview of the Transfer Tax Act. It is not contended that the property transferred by the deed of trust was a gift made by the donor in contemplation of death, but the trustee contends that it was a gift inter vivos, while the State Comptroller contends that it was a transfer of property intended to take effect at or after the death of the grantor. If the grantor had not reserved the right to amend or revoke the deed of trust, the transfer would have been absolute and the gift would have been a valid gift inter vivos. But the reservation of the right to amend or revoke the deed of trust prevented the trustee or cestui que trust from having that complete dominion over the property which is the characteristic of absolute ownership. Their right was entirely dependent upon the will of the grantor. It is a general prin-

ciple of law that to constitute a valid gift inter vivos the donor must part with the possession of the property and divest himself of all ownership in or dominion over it, and it must be delivered to the donee. Matter of Bolin, 136 N. Y. 177, 32 N. E. 626; Ganon v. McClure, 160 N. Y. 476, 55 N. E. 7, 73 Am. St. Rep. 694. Having retained the right to amend or revoke the deed of trust, the grantor did not surrender complete dominion over the property; on the contrary, she reserved to herself a power to revoke the deed at any time, to take possession of the property and to make such new disposition of it as she might desire. This reserved power is inconsistent with a complete gift of the property. When the cestui que trust received an installment of the income of the trust fund, that constituted a valid gift of the installment, but each installment might be the last, as the donor might revoke the deed before the next installment became due. It was not therefore until the death of the donor that the gift in any aspect became absolute, and that the cestui que trust became irrevocably entitled to the income of the trust property.

[2] The question of the taxability of trust funds created by deeds containing provisions similar to the one under consideration is an exceedingly nice one, and it is difficult to lay down principles beyond the facts of a given case. Such questions have, however, been before the Court of Appeals in two cases. In the Matter of Masury, 28 App. Div. 580, 51 N. Y. Supp. 331, affirmed without opinion, 159 N. Y. 532, 53 N. E. 1127, the donor directed that the income of the trust fund be paid to his grandson until he attained his majority, when the principal of the fund was to be paid to him. The grantor reserved the right to revoke the deed of trust. The court held that the trust fund was not subject to a transfer tax. In Matter of Bostwick, 160 N. Y. 489, 55 N. E. 208, the decedent executed two trust deeds for the benefit of his daughters by the terms of which the income of the trust was to be paid to them during their lives, and upon their death the securities constituting the trust fund were to be paid over to their children, and in default of issue, other provision was made for the disposition of the property. There was reserved to the donor in each of these deeds the power to alter or amend the trust deeds whenever he might desire, the power to withdraw any portion of the trust funds or to substitute other securities, and the power to terminate the trust at any time during the donor's life. The court held that the trust funds were subject to a tax. The court distinguishes the Masury Case by saying that in that case there was some reason in the facts for finding an intention in the donor to make an absolute gift of the property which the mere reservation of the power to revoke was insufficient to negative.

It is difficult for me to reconcile the real principle of the decision in Matter of Masury, 159 N. Y. 532, 53 N. E. 1127, with the real principle of the decision in Matter of Bostwick, 160 N. Y. 489, 55 N. E. 208. But the cases are reconcilable, and I defer wholly to the reasoning on this point of the court in Matter of Bostwick, 160 N. Y. 489, 55 N. E. 208, by which I am bound. It is the final decision of the court of last resort which is alone binding on me. For the reasons stated by me in Re Tod, 85 Misc. Rep. 298, 147 N. Y. Supp. 161, 165, 166, this final

decision is assumed to have been true all along. This rule is involved in the great doctrine of stare decisis. The permanence of final decisions is always necessarily involved in that doctrine which is figuratively the "center of gravity of the jurisprudence of the common law." Without that principle the common law is nothing. Indeed the dignity, the justice, the stability, and the permanence of the institutions of common-law countries would be lost without the doctrine of stare decisis. It is the doctrine of stare decisis which makes such countries pre-eminently countries of law and order and prevents their becoming a land of ceaseless change and arbitrary and willful disorder.

What, then, was the principle adjudicated in Matter of Bostwick? It seems to me it was that the reservation of an absolute power of revocation to the donor of a gift inter vivos or to the settlor of an estate by deed on relations is prima facie property in the donor which is subject to the transfer tax. To be sure such a power, when executory, always ceases on the death of such donor or settlor. But only on that event can the donees acquire an absolute title, and that event is the death of the donor, which is the crux of the transfer tax or the "death tax," as it is often called. But I do not mean to be understood as now holding that every power of revocation is property, or that every settlement subject to a power of revocation may not be the property of the donee. For instance, a power reserved in a marriage settlement to revoke the uses and to reappoint or resettle the estate to new uses is founded on a high consideration, and may fall under a totally distinct principle from that I think contemplated in the cases I have cited. When a settlement is founded on a consideration, the introduction of a power of revocation may not be subject to the transfer tax in all cases. But we have not to do with such hypothetical cases here, but with the facts of this particular case. In the matter under consideration the donor reserved the power to amend or revoke the deed of trust. It will be observed that the power to amend was not reserved in the Masury Case. That this reservation was regarded as no empty formality is evident from the fact that a deed executed by donor in 1896, and by which she directed that the income of the fund, after the death of her son, should be paid to his wife, Charlotte, was amended in 1901 so as to exclude Charlotte from participation in the income of the corpus of the trust fund.

An absolute power of revocation was always regarded in equity, as Chancellor Kent said, as property of the donor, grantor, or the donee or grantee of the power. Section 145, of the Real Property Law, now declares that the reservation for settler's own benefit of a power of revocation is property of the settlor. Yet I can conceive of a reservation of such a power in a manner which would not subject the power to that section, but this is not such an instance. Here the power of revocation is beneficial and absolute to the donor or settlor, and that in my judgment subjects it to the transfer tax.

This court has before this had occasion to hold in cases involving questions practically similar to the one presented in this matter that the trust funds were subject to the provisions of the Transfer Tax Law. Matter of Smith Ely, 149 N. Y. Supp. 90, opinion quoted in

Chrystie on Inher. Tax, p. 868; Matter of Schermerhorn, infra, reported in Chrystie on Inher. Tax, p. 869. I will now hold that this case is controlled by the principle of the Matter of Bostwick, supra, and that the corpus of the trust fund is subject to a transfer tax.

Application denied. Submit order on notice assessing a tax on the transfer of the trust fund.

